IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY L. PARSONS, | No. 2:11-CV-2179-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 11) and defendant's cross-motion for summary judgment (Doc. 16).

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on March 11, 2009. In the application, plaintiff claims that disability began on November 6, 2007. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on October 13, 2010, before Administrative Law Judge ("ALJ") L. Kalei Fong. In a February 23, 2011, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairments: lumbar disc protrusion and adjustment disorder with depression;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the residual functional capacity to perform unskilled light-medium work that involves occasional postural activities and occasional interaction with others and that restricts the climbing of ladders, ropes, and scaffolds; and

4. Considering the claimant's age, education, work experience, and residual functional capacity, the Medical-Vocational Guidelines direct a finding of not disabled.

After the Appeals Council declined review on August 25, 2011, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986);

Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ erred in rejecting the opinion of plaintiff's treating physician, Dr. Lee; (2) the ALJ erred in rejecting plaintiff's testimony as not credible; and (3) the ALJ erred in failing to obtain vocational expert testimony.

### A. **Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

///

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to Dr. Lee, the ALJ stated:

> Wayne Lee, M.D, served as treating physician in 2007-2009. Dr. Lee completed a Multiple Impairment Questionnaire in March 2009 and reported neck, lower back, and buttocks pain following a motor vehicle accident, mild lumbar spinal stenosis at L4-5, and moderate depression, He noted that pain occurred with motion; range of lumbar motion was reduced; and lifting, sitting, or standing too much were precipitating factors leading to pain. Dr. Lee found no evidence of appreciable fatigue or unacceptable side effects of medication. He determined that the claimant is able to sit for up to one hour in an eight-hour day and

>stand/walk for up to one hour in an eight-hour day; requires the opportunity to take unscheduled breaks to rest every hour for 15-30 minutes or longer; and is restricted from pushing, pulling, kneeling, bending, stooping, and exposure to heights.  He noted moderate limitations in using the arms for reaching (including overhead) and determined that pain and physical condition would constantly interfere with attention and concentration and with the ability to keep the neck in a constant position as looking at a computer screen; that symptomatology would increase if the claimant was placed in a competitive work environment; and that depression associated with a loss of function can worsen pain and create feelings of being overwhelmed.  He found the claimant capable of low stress work and noted the likelihood that the claimant would be absent from work more than three times a month (Ex. 5F).
>
>In a subsequent narrative in December 2009, Dr. Lee reported that improvement had been slow with physical therapy in 2007 following the claimant's car accident and that pain management had been recommended.  The claimant was working, but his job had become more active and he was riding a motorcycle that worsened back pain.  Injections were administered with equivocal results.  At no point was surgery recommended.  Dr. Lee concluded that the claimant is disabled and is unable to perform full-time work duties for eight hours per day, five days per week in a normal, competitive work setting due to pain.  He remained skeptical of any further recovery.  The undersigned assigns little weight to the opinion of Dr. Lee as to such extreme limitations.  Dr Lee is not an orthopedic specialist.  His conclusions are not consistent with the evidence, as a whole, and he does not acknowledge that further treatment could be pursued in light of the claimant's conservative treatment history to date.

Plaintiff argues that the ALJ's reasons for rejecting Dr. Lee's opinion are not valid.  According to plaintiff, "[t]he ALJ's first objection – that Dr. Lee is not an orthopedic specialist, but merely a family practitioner – is not a legally valid basis for rejecting a treating physician's opinion."  Plaintiff also asserts that the ALJ's statement that the doctor's "conclusions are not consistent with the evidence as a whole" is flawed because it is not accompanied by any citation or further explanation.  Finally, plaintiff faults the ALJ for relying on Dr. Lee's failure to recommend further treatment as a basis for rejecting the doctor's opinion.

As indicated above, when evaluating a medical opinion the ALJ may consider whether there are contradictory opinions in the record and whether the opinion is itself supported by objective findings.  Here, the ALJ concluded that Dr. Lee's assessed limitations are "not

consistent with the evidence, as a whole." Thus, the ALJ essentially found that other evidence – opinions from other doctors and evidence of objective clinical findings – simply did not support Dr. Lee's conclusions. In so doing, the ALJ set forth a detailed summary of the contradictory evidence and made a decision as to the conflicting opinions. Specifically, the ALJ discussed a January 2010 evaluation performed by agency doctor Joseph Garfinkle, M.D., who noted functional capabilities more consistent with the ALJ's ultimate residual functional capacity assessment. Notably, the ALJ cited the following findings and conclusions recorded by Dr. Garfinkle:

> . . . Upon examination, range of motion of the neck was within normal limits. Range of motion of the back was forward flexion to 70 degrees with lateral flexion and extension normal. Straight leg raising test produced lower back pain at 45 degrees bilaterally. There was no spasm in the paraspinal muscles of the neck or back. Extremity range of motion was grossly normal. There was good motor tone bilaterally with good active motion. Strength was 5/5 in all extremities. Sensation was intact. Reflexes were normal bilaterally. . . .

Given the approach taken by the ALJ in evaluating the medical opinions, the court does not find that the ALJ erred in outlining conflicting opinions and resolving such conflict by discounting Dr. Lee's assessed limitations.

### B. **Plaintiff's Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d

1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ began by outlining plaintiff's testimony as follows:

> . . . [T]he claimant testified that he had a car accident on the way to work in 2007 and went on state disability for one year. He reported that he was unable to go back to work because of lifting limitations and other back issues. He noted that he has a hard time sleeping because of medication and has low back/buttocks pain. He stated that he has limited walking (30 minutes), sitting (45 minutes), and standing (30 minutes) abilities, but can walk/stand for three hours. He reported that his tendons split in the accident and did not heal properly. He noted that he had to stop treatment, as he was unable to pay the cost of medical treatment. He stated that he has not seen a specialist; he does not have medical insurance; and he is not currently seeing a doctor for depression. He reported that he is depressed

and frustrated over the loss of his life as he knew it and rarely leaves the house, spending a limited time on the Internet. He noted that he takes Zoloft.

The claimant reported in Ex. 1E & 9F that he has low back and buttocks pain and it feels as if his muscles and nerves are being compressed in a vice. He noted that he has pain everyday (all day and all night) especially in the morning when his legs are sore. He stated that activity causes pain and that he takes Hydrocodone, Ocycontin, Lyrica, and Sertraline. He reported that medication causes lightheadedness, dizziness, drowsiness, loss of appetite, trouble talking, difficulty concentrating, and mood changes. He noted that he tried epidural steroid injections, a branch block, ice packs, and a heating pad in the past. He stated that he goes to the grocery store daily, takes several short walks daily (1/2 mile), does not carry anything over 15 pounds, and does not socialize. He reported that he loads the washer and dryer, prepares simple meals, folds clothes, goes out three times a day, grocery shops, cooks dinners, and handles a savings/checking account. He noted that he cannot lie on his back and has no social activities. He stated that he can follow instructions well, but cannot handle stress and change very well.

In concluding that this testimony was not credible, the ALJ stated:

The claimant alleges debilitation due to severe back pain and depression. The record shows that the claimant was involved in a motor vehicle accident in January 2007 and reported injuries to his back. Findings were generally benign with initial radiological studies negative. The claimant was treated with pain medication and referred for physical therapy (Ex. 1F). Overall, the claimant's complaints are not supported by the evidence. There is mention that the claimant was working and riding a motorcycle. Treatment has been limited and has only been performed by the claimant's treating physician. The claimant was never referred to or seen by a specialist. The claimant's treating physician noted only trace fatigue and no unacceptable side effects of medication regimens (Ex. 10F). The claimant reported that he is able to lift/carry 15 pounds. The claimant reported that he is plagued by depression, but he is not seeing a mental health practitioner for counseling sessions. The claimant remains independent as to his daily activities. He pays his own bills, gets along with family and friends, and performs many household chores. The undersigned notes that the claimant responded well to questioning at the hearing.

Despite pain complaints following the January 2007 car accident, radiological studies continued to be unremarkable. A cervical study in February 2007 was normal and showed no acute findings and only a suggestion of mild diffuse osteopenia. Similarly, a lumbar study showed no acute findings or any significant arthritic changes and only noted diffuse osteopenia. In September 2007, MRI cervical and lumbar studies showed minimal degenerative changes at C5-6 and C6-7 without evidence for cord compression or neural foraminal narrowing and minimal spinal

> stenosis at L4-5 that results from disc bulge and ligamentous hypertrophy (Ex. 3F).
>
> The claimant eventually was referred to a pain management specialist who administered epidural injections and a medial branch block procedure in January 2008 with no significant relief. The claimant also received treatment with ani-inflammatory and pain medications and muscle relaxants (Ex. 2F & 3F).

As to plaintiff's claim of debilitating symptoms arising from depression, the ALJ stated:

> The claimant reports the development of depression associated with his physical state. He has, however, not sought ongoing mental health treatment. . . .

Plaintiff argues that the ALJ's analysis is flawed for three reasons. First, plaintiff asserts that the ALJ violated established case law by rejecting his testimony as not credible "by simply stating that his complaints are not supported by the medical evidence." Next, plaintiff argues that the ALJ's statement that his treatment was conservative is not consistent with the record which, according to plaintiff, shows that plaintiff was seen by specialists when he could afford such treatment. Finally, plaintiff argues that the ALJ's implied finding that plaintiff's activities of daily living are not consistent with his testimony is not supported by the record.

Plaintiff's first argument is not persuasive as it is belied by the hearing decision. Plaintiff argues that the ALJ erred by rejecting his testimony as not credible "simply by stating that his complaints are not supported by the medical evidence." A reading of the hearing decision, however, reflects that the ALJ did not rely "simply" on this reason. In addition to citing the lack of support in the medical record, the ALJ cited other reasons. As plaintiff himself notes, the ALJ also cited a conservative course of treatment. Contrary to plaintiff's assertion, the ALJ relied on more than just lack of support in the record in finding that plaintiff's testimony was not credible.

/ / /

/ / /

/ / /

It is interesting to note that plaintiff does not discuss the ALJ's statement in the hearing decision that, despite alleging disability as a result of the January 2007 accident, he continued to work after that until Dr. Lee placed him on disability.  As defendant notes, alleged limitations are properly rejected where the plaintiff was able to work after the injury causing the alleged limitations.  See Osenbrock v. Apfel, 240 F.3d 1157, 1165-55 (9th Cir. 2001).  Given the ALJ's reliance on this proper reason, along with the cited lack of support in the objective evidence, the court finds that the ALJ's credibility analysis is consistent with the law and supported by substantial evidence.

### C. **Application of the Grids**

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional

limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

In applying the Grids, the ALJ stated:

> . . . [I]n the present instance, the claimant's ability to perform all or substantially all of the requirements of light-medium work is impeded by additional non-exertional limitations.
>
> The undersigned notes that Social Security Ruling 85-15 provides a basis for a conclusion that the occupational base would not be significantly eroded by the claimant's non-exertional limitations that, as noted above, consist of the restriction to unskilled work tasks which involve occasional postural activities and occasional personal interaction and which restrict the climbing of ladders, ropes, and scaffolding. Usual everyday activities, both at home and at work, include ascending or descending ramps or a few stairs and maintaining body equilibrium while doing so. These activities are required in some jobs more than in others, and they may be critical in some occupations. Where an individual has some limitation in climbing and balancing, it would not ordinarily have a significant impact on the broad world of work. Moreover, stooping, kneeling, crouching, twisting, and crawling are progressively more strenuous forms of bending parts of the body. Some activity of this nature is required to do almost any kind of work, particularly when objects below the waist are involved. Therefore, a restriction to occasional participation in the above activities would provide to be an adequate level of functionality in most situations.
>
> Furthermore, Social Security Ruling 85-15 states that the basic demands of unskilled work are defined as understanding, remembering, and carrying our simple instructions, responding appropriately to supervisors, co-workers, and usual work situations, dealing with changes in a routine work setting, and making judgments that are commensurate with the functions of work, i.e., work-related decisions, thus the claimant's mental impairments as described above could not have a significant impact on the ability to perform a broad spectrum of work. Accordingly, the undersigned finds that the claimant's non-exertional limitations do not

1           significantly erode the occupational base.

2 The ALJ concluded that Medical-Vocational Rules 202.14, 202.21, 203. 22, and 203. 29 directed
3 a finding of "not disabled."  Plaintiff argues that the non-exertional limitations of only
4 occasional postural activities, only occasional interaction with others, and no climbing of
5 ladders, ropes, and scaffolds render the Medical-Vocational Guidelines inapplicable.  According
6 to plaintiff, the ALJ erred by failing to obtain vocational expert testimony.

7           Plaintiff's argument is based on the notion that the effect of non-exertional
8 limitations must be assessed in the context of medium work.  Plaintiff apparently relies on the
9 ALJ's conclusion that plaintiff can perform "light-medium" work to argue that the correct
10 context is medium work.  The court does not agree.  The ALJ's residual functional capacity
11 finding that plaintiff can perform "light-medium" work is equivalent to saying that plaintiff can
12 perform work ranging from "light" in exertion to "medium" in exertion.   In other words, at the
13 lowest functional level, plaintiff can still perform light work.  Given that the non-exertional
14 limitations noted by plaintiff – occasional postural activities and occasional interactions with
15 others – do not significantly erode the occupational base of light work, see Social Security
16 Ruling 85-15, the ALJ properly relied on the Grids.  The existence of the non-exertional
17 limitation of only occasional interaction with others does not change this conclusion because
18 light work "ordinarily involves dealing primarily with objects, rather than data or people."  Id.
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 11) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 16) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 25, 2012

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE